**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Lisa M. Alleman, individually** | ) | **CASE NO. 1:09 CV 1356** |
| **and as the Administrator of the Estate of** | ) | |
| **Ronald E. Alleman,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **YRC, f/k/a Yellow Transportation, Inc.,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | **Memorandum of Opinion and Order** |

**INTRODUCTION**

This matter is before the Court upon Defendants' Motion for Partial Summary Judgment (Doc. 65). This is a personal injury and wrongful death action. For the following reasons, defendants' motion is GRANTED.

**FACTS**

Plaintiff, Lisa Alleman, an Ohio resident, brings this action against defendant, YRC (f/k/a Yellow Transportation, Inc.) (hereinafter "YRC"), a Kansas trucking company, and against

1

defendant, Robert J. Trella (hereinafter "Trella"), a tractor-trailer driver employed by YRC. Plaintiff is the surviving spouse and estate administrator of Ronald Alleman, who died after the vehicle he was driving collided with the tractor-trailer Trella was driving on Interstate 90 in Lake County, Ohio on December 16, 2008. Plaintiff alleges that defendants were negligent or reckless in operating the truck, which pulled two empty trailers, on the interstate during freezing rain.

Trella has been a professional tractor-trailer driver since 1991. YRC hired him in 1997. Until the accident at issue in this case, Trella's driving record was clean. On the day of the accident, Trella was dispatched from Buffalo, New York to Syracuse, New York to pick up a load of freight. The weather on the drive to Syracuse was clear and the road conditions were dry. When Trella arrived in Syracuse in the late afternoon or early evening, a return load was not ready for him and the dispatcher told him he was instead being dispatched to Cleveland with two empty trailers.[1]

On that day, the National Weather Service issued winter weather advisories for Lake, Geauga, and Ashtabula counties that were in effect from 4:00 p.m. until 7:00 a.m. the following morning. The advisories called for a mixture of snow, sleet, and freezing rain in quantities enough to make roads and surfaces quite icy.[2] Trella "voiced a safety concern" to the dispatcher about driving with two empty trailers given that the forecast called for the possibility of freezing

---

[1] The configuration of a tractor, two trailers, and a dolly is sometimes referred to in the evidence as pulling "doubles," or in this case, "empty doubles." (Trella Depo. 132:4-12.)

[2] Defendants quote the National Weather Service advisory as including the language: "the word advisory implies that severe winter weather is not anticipated." Defendants, however, do not include a citation to or exhibit of the advisory. Plaintiff does not dispute the language of the advisory in her opposition brief.

2

rain. (Trella Depo. 139:9-22.)  He testified that he was not comfortable pulling two empty trailers under those conditions. (Id. at 135:17-18.)  He wanted to avoid icy roads. (Id. at 273:18-25.)  Despite his concern, he was dispatched with the empty doubles. (Id. at 134:22-135:9.)

Trella testified that after the final decision had been made to dispatch him with empty doubles, "it [was] now on [him] to assess the situation and decide whether to go or not." (Id. at 137:11-15.)  He "decided to go based on the fact that the road, the sky was clear, the roads were dry, and in [his] mind [he] made an assessment and [he] took the load." (Id. at 137:16-19.)  He also testified that he could be fired for refusing a "safe and reasonable dispatch" and that YRC sends out "a lot" of empty trailers every winter. (Id. at 293:21-294:12.)  The roads continued to be dry until Trella was approximately 40 or 50 miles west of Buffalo, when it started to snow. (Id. at 168:9-21.)  He slowed down. (Id. at 169:4.)  When he reached Ohio, the snow turned to rain. (Id. at 175:25.)  Trella testified that the roads at that point were just wet and that he adjusted his speed to account for traffic and weather conditions. (Id. at 176:1-24.)  He further testified that the rain was freezing rain and that the roads were just wet because they had been treated. (Id. at 180:12-13.)  He also testified that he knew the act of steering from one lane to another on an icy road could cause him to lose control of the vehicle. (Id. at 182:10-15.)

Trella testified that as he passed an exit ramp at the Ashtabula County and Lake County border, the road went from being wet to being a solid sheet of ice. (Id. at 180:12-14.)  He lost control of the tractor-trailer, which crossed over the median and came to rest in the eastbound lanes of I-90. One trailer disconnected. (Id. at 193:23-194:4.)  Ronald Alleman was driving eastbound on I-90 and collided with the back trailer, his vehicle ending up underneath the trailer. (Id. at 200:9-13.)  Alleman died of injuries sustained in the collision.  Trella testified that at no

time prior to losing control of his vehicle did he realize he was no longer driving on treated roads. (Id. at 182:20-24.)

Trella pleaded guilty to reckless operation of a motor vehicle under Ohio Rev. Code § 4511.20, a misdemeanor, and to failure to control under § 4511.202, a minor misdemeanor.

The complaint contains eight claims for relief. Count one is claim for negligence per se against Trella. Count two is a claim for negligence per se against YRC. Count three is a claim for negligent hiring, retention, training and/or supervision of Trella against YRC. Count four is a claim for negligent maintenance and/or servicing of the tractor, trailers, and/or dolly. Count five is a claim for punitive damages for defendants' conscious disregard for the rights and safety of others. Count six is a claim for loss of consortium. Count seven is a claim for damages due to pre-impact terror and fear of impending death. Count eight is a wrongful death claim on behalf of Ronald Alleman's next of kin.

Defendants now move for partial summary judgment on counts three, four, five, and seven. Plaintiffs oppose the motion.

**STANDARD OF REVIEW**

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)).[3] *See also LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material fact rests with the moving party:

---

[3] Fed. R. Civ. P. 56 was recently amended and revised, though the standard remains the same.

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). A fact is material only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden shifts to the nonmoving party:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 255). *See also United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).

Summary judgment is appropriate when a party who bears the burden of proof at trial fails to make a showing sufficient to establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). When the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court– that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. "The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must

5

be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 252). Moreover, if the evidence is "merely colorable" or is not "significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-50.

## ANALYSIS

Defendants' motion as to counts four and seven is unopposed and therefore granted.

### A.      Count Three:  Negligent Supervision

Defendants' motion on count three is opposed only on the basis of negligent supervision. Under Ohio law, a plaintiff asserting a negligent supervision claim must show (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) a causal link between the employer's negligence in hiring, supervising, and retaining the employee and the plaintiff's injuries. *Lehrner v. Safeco Ins./Am. States Ins. Co.,* 872 N.E.2d 295, 305 (Ohio Ct. App. 2007).

Defendants argue that no evidence exists showing that Trella was an incompetent truck driver. Defendants point out that Trella was licensed, trained, properly certified, attended safety meetings regularly, and drove tractor-trailers for over 20 years without being involved in an accident that was chargeable against him.

Plaintiff argues that she is required only to show that Trella was incompetent to perform the task he was ordered to perform, and does not need to show that Trella was a wholly incompetent truck driver. Plaintiff argues that a genuine issue of material fact exists with regard to whether Trella was negligently supervised because the evidence shows that Trella was

6

incompetent to drive under the conditions that existed on December 16, 2008. In support, plaintiff points to Trella's testimony that he was not comfortable hauling two empty trailers under the weather conditions. Plaintiff also argues that YRC knew he was not comfortable hauling the trailers and that YRC had both the authority and the opportunity to honor his request to not haul the empty doubles.

Defendants reply that although Trella voiced a safety concern to the dispatcher, he was not incompetent to make the drive. In support, defendants point to Trella's testimony that he concluded that he could make the trip safely.

Upon review, the Court finds that defendants' motion must be granted as to count three. Plaintiff sets forth no evidence showing that Trella was incompetent to drive his truck under the conditions he experienced on the day of the accident. Although Trella did voice a safety concern and testified that he was not comfortable pulling empty doubles (Trella Depo. 134:13-135:20), the record does not reflect a lack of competence. As defendants point out in their motion, Trella attended commercial truck driving school (id. at 9:9-15), received a license to drive a truck (id. at 9:1-6), became qualified to pull long combination vehicles, which requires five years' experience of pulling doubles (id. at 18:22-19:13), and attended safety meetings and viewed safety videos over the span of his career at YRC (id. at 87:16-22). Additionally, Trella testified that after he voiced his safety concern on the day of the accident and was instructed to proceed to Cleveland, he assessed the situation and determined that he would make the trip and would pull over if "the conditions got terrible where I felt unsafe." (Id. at 142:2-5.) Moreover, Trella testified that he was driving with reduced speed as appropriate for the weather and the traffic (id. at 176:1-24), and that the roads were treated and wet but not icy up to the point he lost control of

7

the truck (id. at 180:12-14).  In light of this evidence, Trella's raising of a safety concern is not sufficient to establish a genuine issue of material fact as to his competence.  Accordingly, defendants' motion for summary judgment on count three is granted.

**B.	Count Five:  Punitive Damages**

Under Ohio law, punitive damages may be awarded in tort actions that involve fraud, actual malice, or insult.  *Preston v. Murty,* 512 N.E.2d 1174, 1175 (Ohio 1987) (citing *Roberts v. Mason,* 10 Ohio St. 277 (1859)).  As no fraud or insult is alleged in this case, whether punitive damages are available turns on whether actual malice is present.  *Id.*  Actual malice is (1) that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge; or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.  *Id.* at 1176.  It is the second type of actual malice that plaintiff is alleging in this case.

Punitive damages are only available when conscious wrongdoing is involved.  *Id.* ("Since punitive damages are assessed for punishment and not compensation, a positive element of conscious wrongdoing is always required.").  Conscious wrongdoing "requires the party to possess knowledge of the harm that might be caused by his behavior."  *Id.*  Further, more than mere negligence is required:

> The concept requires a finding that the probability of harm occurring is great and that the harm will be substantial.  A possibility or even probability is not enough as that requirement would place the act in the realm of negligence.

*Id.*  A reckless actor, who only has knowledge of the mere possibility that his actions may result in substantial harm, is not behaving maliciously.  *Motorists Mut. Ins. Co. v. Said,* 590 N.E.2d 1228, 1234 (Ohio 1992), *overruled on other grounds by Zoppo v. Homestead Ins. Co.,* 644

8

N.E.2d 397 (Ohio 1994); *Spalding v. Coulson,* Nos. 70524 and 70538, 1998 Ohio App. LEXIS 4105, at *56 (Ohio Ct. App. Sept. 3, 1998) ("Recklessness, carelessness, or ignorance of the actor do not justify the imposition of punitive damages.")  Accordingly, before submitting the evidence to a jury, a court must determine (1) if reasonable minds can differ as to whether the party was aware that his act had a great probability of causing substantial harm, and (2) whether sufficient evidence is presented that the party consciously disregarded the injured party's rights or safety.  *Preston,* 512 N.E.2d at 1176.

The complaint alleges that a variety of bases exist for awarding punitive damages, including violation of federal and state statutes and regulations prohibiting operation of commercial motor vehicles in inclement weather and without proper braking systems.  (Cmplt. ¶¶ 45-47; ¶¶ 49-53.)  Plaintiff, however, does not oppose defendants' argument that violation of commercial vehicle regulations does not create tort liability, thus the Court will not address these arguments.

Plaintiff also alleges that defendants knew the dangers associated with pulling empty doubles on icy roads, specifically that they knew such operation was likely to adversely affect traction and would likely cause substantial harm to others.  (Id. at ¶¶ 44 and 48.)  Defendants argue that no evidence exists from which a reasonable jury could conclude that Trella consciously disregarded a great probability of substantial harm.  Defendants argue that although Trella was aware of the winter weather advisories, such advisories indicated that severe weather was not anticipated and that Trella testified that he intended to stop his vehicle if travel became hazardous.  Defendants further argue that the evidence shows that up to the point of the accident, the roads were treated and Trella modulated his speed in accordance with weather and traffic

9

conditions.

Plaintiff responds that defendants knew Trella was likely to encounter icy roads and could kill someone while hauling two empty trailers, yet YRC consciously disregarded Trella's concerns about the safety of hauling empty doubles under the weather conditions. Plaintiff also argues that Trella failed to pull over when he saw the weather get bad. This, plaintiff argues, shows that defendants expressly agreed to a course of conduct warranting punitive damages. Plaintiff further argues that YRC ratified Trella's malicious conduct by asking him "to undertake the very conduct that killed Plaintiff Alleman." Finally, plaintiff argues that Trella's guilty plea to the charge of reckless operation conclusively establishes that he "acted willfully and/or with reckless disregard of the rights of others which evinces a reckless indifference of the consequences to the life of others" when he drove his tractor-trailer on the day of the accident.

Defendants reply that Trella's guilty plea does not satisfy the required element that the tortfeasor subjectively know that a great probability of substantial harm existed at the time he acted. Defendants also argue that liability for punitive damages does not extend to YRC simply because Trella was acting within the scope of his employment.

Upon review, the Court finds that no reasonable jury could find defendants liable for punitive damages in this case. As an initial matter, Trella's guilty plea to reckless operation of a motor vehicle under Ohio Rev. Code § 4511.20 does not prove that Trella behaved with conscious disregard for the rights and safety of other persons with a great probability of causing substantial harm. Although a conviction under this statute establishes that a person operated his or her vehicle "in willful or wanton disregard of the safety of persons or property," the reckless operation statute does not encompass the element of conscious wrongdoing required for the

10

award of punitive damages.  Reckless action is insufficient.  *See Rubeck v. Huffman,* No. CA 2443, 1977 Ohio App. LEXIS 9647 at *10-14 (Ohio Ct. App. March 28, 1977) (holding that although conviction for vehicular homicide while driving under the influence and recklessly operating vehicle did not automatically warrant punitive damages, the evidence in the case showed that defendant was conscious of a high probability that he would injure someone else, thus the issue should have gone to the jury).

       Further, plaintiff has set forth no evidence showing that Trella engaged in conscious wrongdoing.  Although plaintiff argues that both Trella and YRC knew Trella could kill someone, plaintiff cites to no evidence showing that defendants were conscious of a high probability that substantial harm would occur.  Being aware of the dangers that accompany pulling empty doubles in freezing rain does not establish conscious wrongdoing, which requires more than knowledge of the possibility or probability that harm may occur from a reckless act. *Motorists Mut. Ins. Co.,* 590 N.E.2d at 1234.  Plaintiff also argues that Trella engaged in conscious wrongdoing because he failed to pull off the road when he saw the weather get bad, but all of the evidence cited shows that Trella was driving on treated roads up to the point of the accident, when he first became aware that the road was no longer treated.  Additionally, the evidence shows that Trella adjusted his speed according to the weather and the traffic.  Under these circumstances, the Court finds that reasonable minds cannot differ as to whether Trella was aware that his act had a great probability of causing substantial harm.  Moreover, plaintiff has not presented sufficient evidence that Trella consciously disregarded Alleman's rights or safety. As the Court finds no genuine issue of material fact as to whether Trella engaged in conscious wrongdoing, the Court declines to address the parties' arguments as to whether YRC is liable for

11

punitive damages based on Trella's behavior.  Accordingly, defendants' motion for summary judgment on count five is granted.

### **CONCLUSION**

For the foregoing reasons, defendants' Motion for Partial Summary Judgment is GRANTED.

IT IS SO ORDERED.

                                                /s/ Patricia A. Gaughan
                                                PATRICIA A. GAUGHAN
                                                United States District Judge

Dated: 4/11/11